UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **EVERETT MCQUEEN** | ) | Case No.  1:06 CV 1003 |
| | ) | |
| Petitioner, | ) | Judge James S. Gwin |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| **DAVID BOBBY, Warden** | ) | |
| | ) | |
| Respondent, | ) | Magistrate Judge James S. Gallas |
| | ) | |

Everett McQueen is a prisoner in state custody who has become thoroughly frustrated in his efforts to appeal his convictions in the state courts. He has turned to this federal district court seeking federal habeas corpus relief  under 28 U.S.C. §2254 *pro se* from his November 2003 convictions following bench trial.  The Cuyahoga County Court of Common Pleas  convicted McQueen on eight counts of rape involving victims under 13 and 10 year of age, eight counts of illegal use of minors in  nudity-oriented material, and seven counts of gross sexual imposition. McQueen was acquitted on one rape count, six gross sexual imposition charges, and the repeat violent offender specifications were dismissed. (Respondent's Ex. 4, ECF # 10-5). Following psychiatric assessment, McQueen was sentenced to an aggregate term of 22 year to life, as journalized on January 12, 2004 (Respondent's Ex. 4-5). McQueen was also adjudicated to be a sexual predator. (Respondent's Ex. 6 ECF # 10-5).

## *I.*

*Appellate history in the State Courts of Ohio:*

There is no dispute over the fact that trial counsel was appointed by the trial court at sentencing for McQueen's appeal. Trial counsel, though, did not file a notice of appeal. McQueen,

2

however, timely filed a notice of appeal *pro se* on January 15, 2004, only to have his appeal rejected on February 12, 2004 for failure to file a praecipe in accordance with Ohio's Eighth District's local appellate rule 9(B). (Respondent's Ex. 7-8, ECF # 10-6).  Notice of this decision was sent to McQueen's trial counsel, although McQueen did expressly state in his notice of appeal, "defendant expresses desire to not have trial counsel . . .  prepare the appeal in this matter and therefore allowing the court to elect new counsel in this matter . . . ."  (Respondent's Ex. 7-8). McQueen attempted to have legal representation through the Office the Ohio Public Defender, but was turned down by that office.  (See Application for Reopening Appeal, Respondent's Ex. 9-H, ECF # 10-6).
[1]

Months after learning that his appeal had been dismissed, McQueen filed an Ohio R. App. P. 26(B) application for reopening appeal on October 5, 2004, stating trial counsel had neglected him by not prosecuting or even initiating his appeal, trial counsel had  refused to accept his collect calls, the state appellate court had neglected to appoint him new counsel for the appeal, he requested a status report on his appeal and received a copy of the docket around May 7, 2004 indicating that his appeal had been dismissed, and he subsequently was exposed to a series of events which created impediments to obtaining assistance for his Rule 26(B) application.  McQueen argued that trial counsel had been appointed during open-court proceedings to prosecute an appeal, and he bent the facts to argue that counsel had been awarded $2,700 for this legal representation (the fee award was for trial work)  and that counsel had refused to withdraw from the case and allowed the time limit

---

[1] Ohio Rev. Code  §120.16(D) provides:
The county public defender shall not be required to prosecute any appeal, postconviction remedy, or other proceeding, unless the county public defender is first satisfied there is arguable merit to the proceeding.

3

to expire for filing a notice of appeal (this claim was based on counsel's failure to file a motion to

as counsel).

The state appellate court held that the attorney-client relationship had ended, so a Rule 26(B)

application was the "wrong remedy for the facts in this case." (Opinion of Eighth District Court of

Appeals, Respondent's Ex. 12, ECF # 10-7). McQueen then timely but unsuccessfully appealed to

Ohio's Supreme Court raising the following sole proposition of law:

> A COURT OF APPEALS HAS NO DISCRETION TO DENY AN APPLICATION FOR
> REOPENING WHEN AN INDIGENT DEFENDANT-APPELLANT COMPLAINS THAT HE WAS
> DENIED HIS FEDERAL RIGHT TO THE ASSISTANCE OF COUNSEL DURING HIS FIRST
> APPEAL AS A MATTER OF RIGHT.

(Respondent's Ex. 14.) .

McQueen argued that the state appellate court should grant leave to appeal after he had been denied

his first appeal as of right due to the prejudice suffered as a result of his inability to retains counsel

and to declare that an application to reopen appeal under Ohio R. App. P. 26(B) is the proper remedy

for this matter. His memorandum in support of jurisdiction cited *Gideon v. Wainwright*, 372 U.S.

335 (1963); *Penson v. Ohio*, 488 U.S. 75 (1988) and *Fields v. Bagley*, 275 F.3d 478 (6th Cir. 2001).

The Ohio Supreme Court dismissed the appeal "as not involving any substantial constitutional

question." (Respondent's Ex. 16).

4

## *II.*

*Federal Application for habeas corpus:*

In what respondent contends is both an untimely and procedurally defaulted application for federal review under 28 U.S.C. §2254, McQueen is before this district court with this sole proposition of law:

> GROUND ONE: PETITIONER, BECAUSE HE WAS INDIGENT, WAS DENIED THE OPPORTUNITY TO APPEAL HIS CASE OR TO DO SO EFFECTIVELY AS A NON-INDIGENT PERSON COULD HAVE DONE UNDER THE CIRCUMSTANCES, DUE TO THE DENIAL OF STATE-FUNDED ASSISTANCE IN PREPARING FOR APPEAL, IN VIOLATION OF THE EQUAL PROTECTION AND DUE PROCESS CLAUSES OF THE 14TH AMENDMENT.

> Supporting FACTS: On 1/8/04, the trial court appointed appeal counsel in open-court. McQueen was brought back to court the next day for clarification of sentence. Appeal counsel never filed a Notice of Appeal and various state-court actors affirmatively misled McQueen into believing an appeal was pending and further misled him that court-appointed counsel was representing him. McQueen was indigent during all stages of the proceeding and files the instant action in forma pauperis. McQueen did file a Request for Counsel inside his pro se "Notice of Appeal" regarding the sentence of 1/8/04 (Case No. CA 84095), but the state appellate court refused to appoint counsel and dismissed for failure to file a praecipe. The same state appellate court denied the application to reopen and thereby unreasonabl[y] determined the facts. The decision was also contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the U.S.S.Ct.

(Habeas petition, p. 5.)

5

## III.

*Lack of Exhaustion:*

The central question of exhaustion of state remedies must be examined from the outset.  See *Harris v. Rees*, 794 F.2d 1168, 1170 (6th Cir. 1986); *Clinkscale v. Carter*, 375 F.3d 430, 436-37 (6th Cir. 2004), *cert. denied*, 543 U.S. 1177 (2005).The exhaustion doctrine requires that the prisoner "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate review process." See *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 1732-33, 144 L.Ed.2d 1 (1999). This includes any discretionary appeals to the state's highest court.  *Id*., 526 U.S. at 845, 119 S.Ct. at 1733.  Respondent argues that McQueen failed to utilize two state court vehicles for judicial review, a properly filed direct appeal and a motion for delayed appeal.  Respondent concludes that a discretionary delayed appeal under Ohio R. App. P. 5(A) was available to McQueen, but McQueen pursued an Ohio R. App. P. 26(B) application to reopen appeal thereby waiving his right to appeal. (Answer pg. 12-13).


Respondent's argument does not rest on firm legal ground. As 28 U.S.C. §2254(c) provides:

> An applicant shall not be deemed to have exhausted the remedies available in the courts of the State within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

The prerequisites for a delayed appeal under Ohio R. App. P. 5(A) remain intact. There is an unexhausted state remedy available.


All that is required for this discretionary form of review are "criminal proceedings" and a motion setting forth the reasons for the failure of the appellant to perfect an appeal as of right with

6

concurrent filing of a notice of appeal. See Ohio R. App P. 5(A)(1)(a) and 5(A)(2). There is no waiver of this appeal since the direct appeal was not perfected, and the state appellate court has ruled that McQueen's Ohio R. App. P. 26(B) application to reopen his appeal was the "wrong remedy for the facts in this case." Respondent's argument is "repugnant to the basic guarantee of 'one trial-one review.'" *City of Greenhills v. Miller* 20 Ohio App.2d 313, 314, 253 N.E.2d 311, 313 (1969); *State v. Bishop,* 2008 WL 2221861, 1 (Ohio App. 2 Dist.). Respondent is correct that there is a state remedy available to McQueen.

*IV.*

7

*Timeliness:*

Respondent argues for dismissal contending that McQueen's petition is untimely filed under 28 U.S.C. §2244(d).[2]  The burden for this argument falls upon respondent. See *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002). Respondent maintains that McQueen's conviction became "final" for purposes of §2244(d)(1)(A) following the 30-day appeal period after sentencing entry was filed on January 12, 2004 which computes to February 11, 2004. The "1-year period of limitation" under §2244(d)(1)(A) then allegedly ran without tolling rendering untimely by nearly one year the petition dated March 15, 2006. Respondent claims that the application to reopen the appeal filed on October 5, 2004 did not toll the "1-year period" under §2244(d)(2) because it was not a "properly filed" state post-conviction matter.  Respondent is incorrect on both accounts.

---

[2] 28 U.S.C. §2244(d) reads as follows:

(d)(1) A 1-year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of -

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(d)(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

8

First, respondent forgot that a direct appeal was attempted but rejected on February 12, 2004 due to failure to file a praecipe.[3]  McQueen then  had 45 days commencing with February 13, 2004, until March 30, 2004, to file a timely appeal to the Ohio Supreme Court under Ohio S.Ct. Prac. R. II, § 2(A)(1)(a). See *Carey v. Saffold*, 536 U.S. 214, 219-20, 122 S.Ct. 2134, 2137-38, 153 L.Ed.2d 260 (2002)  *Searcy v. Carter*, 246 F.3d 515, 517 (6th Cir. 2001), *cert. denied*, 534 U.S. 90 (2001); *Isham v. Randle*, 226 F.3d 691, 695 (6th Cir. 2000); *Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000); *Linscott v. Rose*, 436 F.3d 587, 591-92 (6th Cir. 2006); *Williams v. Wilson*, 149 Fed. Appx. 342 (6thCir. 2005)(1-year period begins to run on expiration of the 45-day period under which review could have been sought by Ohio Supreme Court). From March 30, 2004 until October 5, 2004, 189 days of the "1-year period" elapsed.

Second, the application to reopen appeal did toll the running of this statute.  Granted, McQueen's October 5, 2004 application to reopen his appeal under Ohio R. App. P. 26(B) is subject to §2244(d)(2)'s "properly filed" requirement for the purposes of this timeliness calculation. See *Lopez v. Wilson*, 426 F.3d 339 (6th Cir. 2005), *cert. denied*, 547 U.S. 1099 (2006).  It was a "properly filed" state post-conviction remedy which tolled the running of the statute.

"[A]n application is '*properly* filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings.  These usually prescribe for example the form of document, the time limits upon its delivery, the court and office in which it must be lodged and the requisite fee.(footnote omitted)" *Artuz v. Bennett*, 531 U.S. 4, 8, 121 S.Ct. 361, 364, 148 L.Ed.2d

---

[3] The date dismissal was journalized pursuant to Ohio R. App. P. 22(E).(See Respondent's Ex. 8).

9

213 (2000); *Keenan v. Bagley*, 400 F.3d 417, 419-20  (6th Cir. 2005). Respondent argues that

because the state appellate court held that the application to reopen was not the appropriate action

on the facts of McQueen's case, it was not "properly filed" and a "void action." (Answer pg. 7).

Respondent erroneously compares McQueen's application to reopen to the declaratory judgment

action at issue in *Williams v. Brigano*, 238 F.3d 426, 2000 WL 1871682 (Table 2000), which

involved the use of a procedure which was unrecognized under state law.  Applications to reopen

appeals under Ohio R.App. P. 26(B), however, are a recognized form of legal redress. *Williams*

derived its reasoning from *Adeline v. Stinson*, 206 F.3d 249 (2nd  Cir. 2000), a case involving the

prisoner's use of two unorthodox motions with no basis in New York's procedural rules. *Adeline*

stressed the statement from the Second Circuit's decision in *Bennett v. Artuz* that " to qualify for

tolling purpose under §2244(d)(2), 'an application for state post-conviction relief recognized as such

under governing state procedures [must] ha[ve] been filed." *Id.*, 206 F.3d at 251-52, quoting *Bennett

v. Artuz*, 199 F.3d 116, 123 (2d Cir. 1999), affirmed sub nom. *Artuz v. Bennett*, 531 U.S. 4 (2000).

Further, inquiry does not extend to scrutinizing the merits of the state court motion. See *Pratt v.

Greiner*, 306 F.3d 1190, 1192 (2nd Cir. 2002). The state court's rejection of the application to reopen

on its merits  did not render it improperly filed.  McQueen did employ the incorrect procedure, but

this procedure was executed properly, resulting in tolling from October 5, 2004 through the Ohio

Supreme Court's dismissal on December 28, 2005.  From December 28, 2005 to March 15, 2006,

10

77 days elapsed.[4]  Accordingly, the statute of limitation under 2244(d)(1)(A) and 2244(d)(2) had not yet expired when McQueen filed his petition for federal habeas review.

Since the "1-year period" had not yet expired, this alleviates any need to address timeliness considering §2244(d)(1)(B)'s impediment to filing created by State action. Court-appointed counsel's failure to perfect a direct appeal in derogation of the defendant's actual request is attributable to the State.  See *Winkfield v. Bagley*, 66 Fed. Appx. 578, 582 (6th Cir. 2003)(unpublished), *cert. denied*, 540 U.S. 578 (2003); *Waldron v. Jackson*, 348 F.Supp.2d 877 (N.D. Ohio 2004); and see *Murray v. Carrier*, 477 U.S. 478, 489, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)("[I]f the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the State."). In any event, the ground raised is unexhausted in the state courts and the federal habeas petition is timely. The remaining consideration is respondent's contention that  denial of federal collateral relief is nonetheless warranted due to a bar against federal review as a result of a procedural default.

---

[4] McQueen does not receive the advantage of tolling for *certiorari* review by the U.S. Supreme Court from the Ohio Supreme Court's denial of the post-conviction application to reopen appeal under §2244(d)(2). See *Lawrence v. Florida*, 549 U.S. 327, 127 S.Ct. 1079, 166 L.Ed.2d 924 (2007).

March 15, 2006 serves as the filing date under the prison "mailbox rule"  from *Houston v. Lack*, 487 U.S. 266, 270, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988). A  *pro se* petition is treated as having been filed on the date certified it was placed in the prison mailing system, which approximates the date the petition was surrendered to prison authorities for mailing. See *Miller v. Collins*, 305 F.3d 491, 497-498 & n. 8 (6th Cir. 2002). Or in this case, decisions from the Sixth Circuit have accepted a signature date on the habeas petition as evidence when it was delivered to prison authorities. E.g., *Wampler v. Mills*, 60 Fed. Appx. 594, 596 (6th Cir. Apr. 2, 2003); *Goins v. Saunders*, 2006 WL 3334947 *1 n. 1 (6th Cir. Nov. 15, 2006).

11

*V.*

*Procedural Default :*

Respondent raises the issue of a procedural default due to failure to fairly present the federal claim in the state courts. (Answer pg. 9-10), and to reinforce the procedural default stemming from McQueen's failure to perfect his direct appeal (Answer 11-15). "When a 'state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice ... or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Bonilla v. Hurley,* 370 F.3d 494, 497 (6th Cir.2004), *cert. denied*, 543 U.S. 989 (2004), quoting *Coleman v. Thompson*, 501 U.S. 722, 750, 109 S.Ct. 2546, 115 L.Ed.2d 640(1991); and see *Edwards v. Carpenter*, 529 U.S. 446, 451-52, 120 S.Ct. 1587, 1592, 146 L.Ed.2d 518 (2000); *House v. Bell*, 547 U.S. 518, 536, 126 S.Ct. 2064, 2076, 165 L.Ed.1 (2006); *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1971).

It is counterintuitive to address respondent's procedural default argument since the court has before it a timely filed petition carrying an unexhausted claim. However, respondent maintains that the ground is unexhausted yet procedurally defaulted. It is inconsistent to argue procedural default and the existence of an unexhausted state remedy. Delayed appeal is permissible "where there has not been a timely appeal as a matter of right, . . .  by leave of court for good cause shown." *Keener v. Ridenour*, 594 F.2d 581, 585 (6th Cir.1979). McQueen's direct appeal was dismissed and he has yet to exercise  the procedure available to him for a delayed appeal under Ohio R. App. P. 5(A).

12

Respondent contends that federal review is barred because McQueen defaulted on perfecting his direct appeal. However, no ground was presented in this appeal. McQueen never progressed beyond the initial notice of appeal. A procedural default would have occurred if McQueen presented a ground which had not been presented to the state courts  However, a ground was presented of denial of appellate counsel in violation of the Sixth Amendment as viewed through *Penson v. Ohio*. This presentation occurred in the application to reopen appeal which McQueen prosecuted to Ohio's Supreme Court without success.  It is implicit in respondent's argument that McQueen's prosecution of an application to reopen appeal asserting denial of appellate counsel constituted a fair presentation of this claim to the state courts. The state courts had not relied on procedural default when addressing this claim. Respondent mistakenly mixes the procedural default from the rejected direct appeal as a bar against federal review of the claim presented on application to reopen  appeal.

The fair presentation requirement stems from "inseparability" and "interplay" of the exhaustion rule and the procedural-fault doctrine in giving state courts a fair opportunity  to pass upon petitioner's claims. *Edwards v. Carpenter*, 529 U.S. 446, 452-53, 120 S.Ct. 1587, 1592, 146 L.Ed.2d 518 (2000).  Fair presentation of a constitutional claim requires that the state courts be afforded "a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." *Vasquez v. Hillery*, 474 U.S. 254, 257, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986); *Rose v. Lundy*, 455 U.S. 509, 515, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). Without question, the substance of the federal claim submitted for habeas corpus review must be "fairly presented" to the state's highest court because only in this manner will the state courts have been provided with a fair opportunity to pass upon and correct alleged violations of federal rights. See *Anderson v. Harless*,

13

459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982);  *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Coleman v. Thompson*, 501 U.S. 722, 735, 109 S.Ct. 2546, 2557, 115 L.Ed.2d 640(1991). A failure to fairly present the federal ground to the state's highest court constitutes an adequate and independent state procedural rule barring habeas review.  See  *Leroy v. Marshall*, 757  F.2d 94, 99 (6th Cir. 1985), *cert. denied*, 474 U.S. 831 (1985); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *Lordi v. Ishee*, 384 F.3d 189, 194 (6th Cir. 2004), *cert. denied* 546 U.S. 821 (2005).

To be "fairly presented" the federal ground must meet two fundamental requirements. First, the federal ground must have been presented  to the state court under the same theory. See *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004); *Caver v. Straub*, 340 F.3d 340, 346 (6th Cir. 2003); *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *Williams v. Bagley*, 380 F.3d 932, 969 (6th Cir. 2004), *cert. denied*, 125 S.Ct. 1939, 161 L.Ed. 779 (2005).  "Relatedness of the issues . . . does not save [petitioner's] claim."  *Lott v. Coyle*, 261 F.3d 594, 607 (6th Cir. 2001), *cert. denied*, 534 U.S.1147 (2002). Second, petitioner must avoid presentation "in such a manner that the state court could not,

14

consistent with its own procedural rules, have entertained it." [5] *Edwards v. Carpenter*, 529 U.S. at 453, 120 S.Ct. at 1592, 146 L.Ed.2d 518 (2000); and see *Deitz v. Money*, 391 F.3d at 810.

McQueen has presented his federal ground to the state's supreme court under the same legal theory. He explains in his traverse that his federal argument  like his argument to the state courts implicates *Gideon v. Wainwright*, 372 U.S. 335 (1963)(holding that indigent defendants in state criminal prosecutions  have a right to counsel appointed for them), and *Penson v. Ohio*, 488 U.S. 75 (1988)("By proceeding to decide the merits of petitioner's appeal without appointing new counsel to represent him, the Ohio Court of Appeals deprived both petitioner and itself of the benefit of an adversary examination and presentation of the issues."). However, in his traverse he broaches  the issue of substitution of appellate counsel. Compare *U.S. v. Iles*, 906 F.2d 1122 (6th Cir.  1990). This is a new issue which nowhere appears in the petition and McQueen has not sought to amend to include this new ground. Accordingly, for purposes of this court's review,  the same legal theory was presented to the Ohio Supreme Court as was presented for federal collateral review in the petition, notwithstanding the more recently added arguments appearing in McQueen's traverse.

---

[5] In discussing the necessity for prior presentation of ineffective assistance of counsel as "cause" to excuse procedural default, the Supreme Court reasoned:

> Those purposes [of exhaustion] would be no less frustrated were we to allow federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it. In such circumstances, though the prisoner would have "concededly exhausted his state remedies," it could hardly be said that, as comity and federalism require, the State had been given a " fair 'opportunity to pass upon [his claims].' " [*O'Sullivan v. Boerckel*, 526 U.S.], at 854, 119 S.Ct. 1728 (STEVENS, J., dissenting) (emphasis added) (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950)).

*Edwards v. Carpenter,*  529 U.S. at 453, 120 S.Ct. at 1592.

15

While there is identity of the issue to be adjudicated, respondent is correct that there has been a lack of fair presentation. McQueen 's claim raises a challenge based on *structural* error in the state proceedings.  Denial of counsel on appeal is such a "structural error" in which prejudice is presumed and is not required to be demonstrated by the petitioner. See *Roe v. Flores-Ortega*, 528 U.S. 470, 483, 120 S.Ct. 1029, 1038, 145 L.Ed.2d 985 (2000); *Penson v. Ohio*, 488 U.S. 75, 88-89, 109 S.Ct. 346, 354, 102 L.3d.2d 300 (1988); and see *United States v. Cronic*, 466 U.S. 648, 659 n. 25, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657 (1984)"The Court has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." (citations omitted)). This claim stands in contrast to the  more common procedural  error of mere deficient performance by counsel adjudicated under the two-prong deficient performance/ actual prejudice standard from *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Compare *Roe*, 528 U.S. at 476-77, 120 S.Ct. at 1034.

The *Strickland / Cronic* dichotomy imports to the appropriate state procedure. The state courts shared a period of uncertainty when it came to implementing the requirement from *Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), of *effective* assistance of appellate counsel following a criminal conviction as a right guaranteed by the due process clause of the Fourteenth Amendment. Following the Ohio  Supreme Court's decision in *State v. Murnahan*, 63 Ohio St.3d 60 (1992),  Ohio R. App. P. 26(B) was enacted in 1993 as a mechanism to raise challenges to the effectiveness of counsel on appeal. (See Staff Note to 7-1-93 Amendment, Ohio R. App. P. 26).  Ohio R. App. P. 26(B)(5) clearly reads: "[a]n application for reopening shall be

16

granted if there is a genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal." The Ohio Supreme Court has limited applications to reopen to that precise basis under the standard of counsel' effectiveness as gauged under *Strickland*. See *State v. Reed*, 74 Ohio St.3d 534, 535, 660 N.E.2d 456 (1996); [6] *State v. Spivey*, 84 Ohio St.3d 24, 25, 701 N.E.2d 696, 1998 - Ohio - 704 (1998); *State v. Bryant-Bey*, 97 Ohio St.3d 87, 776 N.E.2d 480, 2002 - Ohio - 5450 (2002).

Many years prior to the creation *Murnahan* /s Ohio R. App. P. 26(B) procedure, the state courts had developed procedures for review of alleged deprivation of counsel and designated delayed appeal and post-conviction relief under Ohio Rev. Code §2953.21 as the vehicles to carry the indigent prisoner's denial of the constitutional right to counsel argument, including the right to court-appointed counsel for an appeal as of right as handed down in *Douglas v. People of State of Cal.*, 372 U.S. 353, 355, 83 S.Ct. 814, 815, 9 L.Ed.2d 811 (1963). See *State v. Catlino,* 10 Ohio St.2d 183, 183, 39 O.O. 2d 194, 226 N.E.2d 109, 110 (1967) [7] ; *State v. Webb*, 11 Ohio St.2d 60, 227

---

[6] "In denying the application for reopening, the court of appeals applied the *Strickland* standard for determining whether a defendant is entitled to a new trial. While this court has not expressed its view on adopting that standard for reopening appeals, the federal courts have used and now use Strickland to assess requests in cases alleging ineffective assistance of appellate counsel. See *Duhamel v. Collins* (C.A.5, 1992), 955 F.2d 962, 967; *Heath v. Jones* (C.A.11, 1991), 941 F.2d 1126; *Cross v. United States* (C.A.11, 1990), 893 F.2d 1287. We hold that the two-prong analysis found in *Strickland* is the appropriate level of review to determine whether an appellant has raised a "genuine issue" in an application for reopening an appeal under App.R. 26(B)(5)."

*State v. Reed,* 74 Ohio St.3d at 535, 660 N.E.2d at 458 (1996).

[7]     1. A convicted defendant has a constitutional right to counsel on a direct appeal to the Court of Appeals from his judgment of conviction. *(Douglas v. People of State of California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811, followed.)

    2. In the absence of a judicial determination that a prisoner knowingly and intelligently waived his right to counsel on an appeal to the Court of Appeals from his judgment of conviction, the judgment of the Court of Appeals either dismissing

17

N.E.2d 625 (1967); *State v. Sims,* 27 Ohio St.2d 79, 79, 56 O.O.2d 45, 272 N.E.2d 87, 87 (1971)[8];

*State v. Gentry*, 10 Ohio App. 3d 227, 228, 461 N.E.2d 1320, 1322 (10 Dist. 1983). As the decision

in *Catlino* concluded, "we have no doubt that the Court of Appeals will exercise its discretion to

allow a motion for leave to appeal which such counsel may file." *Catlino,* 10 Ohio St.2d at 185, 226

N.E.2d at 111.

In a subsequent situation where three motions for delayed appeal had been filed and denied,

as well as a *Murnahan* / Ohio R. App. P. 26(B) motion, the Ohio Supreme Court in *State v. Gover*,

71 Ohio St.3d 577, 645 N.E.2d 1246 (1995), approved recourse through state post-conviction

proceedings finding that the error had occurred at the trial court level due to the trial court's failure

to notify counsel of his court-appointment. And see *State v. Hill*, 160 Ohio App.3d 324, 827 N.E.2d

351 (8 Dist. 2005)(distinguishing *Gover* finding that prisoner must first move for delayed appeal

before trial court has jurisdiction to consider post-conviction relief.). For purposes of this review it

is again important to note that *Murnahan* was distinguished in *Gover* since "[u]nlike the appellant

in *Murnahan*, Gover was denied *any* appellate counsel.(emphasis in original)."*Gover*, 71 Ohio St.3d

at 580.

---

the appeal or affirming the judgment of conviction will not amount to an
adjudication of any claims of error that were or could have been raised on that
appeal.

*State v. Catlino,* 10 Ohio St.2d 183, 183, 39 O.O. 2d 194, 226 N.E.2d 109, 110 (1967) (syllabi).

[8] "In the absence of evidence in the record upon which it could be determined that an indigent convicted
defendant knowingly and intelligently waived his right of direct appeal and his right to court-appointed counsel for direct
appeal prior to the expiration of the time in which such an appeal could be taken, a Court of Appeals must make such
a factual determination before it dismisses a motion for leave to appeal."

*State v. Sims*, 27 Ohio St.2d at 79, 272 N.E.2d at 87 (syllabus).

18

The point being that ineffectiveness of appellate counsel as analyzed under *Strickland*'s two-prong meter was to be raised under *Murnahan* and Ohio R. App. P. 26(B) procedures. See *Gover*, 71 Ohio St.3d at 579-80; *State v. Hill*, 160 Ohio App.3d at 330-333, 827 N.E.2d at 355-57. On the other hand, the mechanism which McQueen should have, but did not, utilize in the state courts was a motion for delayed appeal under Ohio R. App. 5(A) for deprivation of appellate counsel under the old indigent defense rights warhorses of *Douglas*, *Penson* and *Penson*'s precursor, *Swenson v. Bosler*, 386 U.S. 258, 259, 87 S.Ct. 996, 997, 18 L.Ed.2d 33 (1967). [9] McQueen chose to present his claim *via* application to reopen appeal under Ohio R. App. P. 26(B), which clearly was an inappropriate vehicle to raise his denial of appellate counsel claim as again emphasized in *Gover*.  There has been no fair presentation since the state court could not entertain it in the manner it was presented. *Edwards v. Carpenter*, 529 U.S. at 453, 120 S.Ct. at 1592.

More importantly, there is no indication under state law that the presentation of the denial of appellate counsel argument in the application to reopen appeal will be deemed *res judicata* when presented once again through the proper vehicle of a motion for delayed appeal. While respondent alludes to this issue, respondent forgets first that the Eighth District appellate court had held that McQueen's application to reopen appeal was the "wrong remedy for the facts in this case." (Opinion of Eighth District Court of Appeals, Respondent's Ex. 12, ECF # 10-7). Second, respondent fails to consider that McQueen lacked appellate counsel and by definition *res judicata* applies to proceedings

---

[9] Note, there is no indication in McQueen's argument that the alleged denial of appellate counsel was due to trial court error.  This is important when considering the availability of state remedies because following the decision in *Gover*, Ohio Rev. Code §2953.21 was amended to contain a limitations period of 180 days. See *State v. Harrold*, 2002 WL 1274198 (Ohio App. 9 Dist.)( pointing out that when *Gover* was decided post-conviction relief could be sought at any time).

19

where the criminal defendant was represented by counsel.[10]  Hence there was nothing on which a state court could stake its position that a forthcoming motion for delayed appeal would be *res judicata*.

## VI.

*Dilemma of Lack of Exhaustion:*

As 28 U.S.C. §2254(b)(2) provides: "[a]n application for writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." McQueen's federal ground , though, cannot be summarily denied on the basis of lack of merit. As *Penson* and *Swenson* illustrate, there can be a deprivation of appellate counsel despite the appointment of counsel.  Under Missouri's former scheme, court-appointed appellate counsel were required only to concomitantly move for new trial (setting forth the arguments to be raised on appeal) and file  notice of appeal. Counsel were then free to move to withdraw, and the state courts, at least in the instance before the U.S. Supreme Court, permitted withdrawal leaving the indigent prisoner to his own devices. The Supreme Court in a *per curiam* decision naturally disapproved of this practice elaborating briefly:

---

[10] As Ohio's Supreme Court explained:

Under the doctrine of *res judicata*, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was *raised or could have been raised by the defendant at the trial*, which resulted in that judgment of conviction, or on an appeal from that judgment.  (emphasis added).

*State v. Szefcyk*, 77 Ohio St.3d 93, 95, 671 N.E.2d 233, 1996 - Ohio - 337 (1996), quoting *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104, 39 O.O.2d 189 (1967) (¶9 of syllabus).

20

If trial counsel filed a motion for new trial and notice of appeal and then withdrew from the case, the Supreme Court of Missouri would require preparation of the transcript for appeal and then would consider the questions raised by the motion for new trial on the basis of pro se briefs by the defendant-appellant, or on no briefs at all. This is what occurred in this case. We agree with the Court of Appeals that this procedure violated respondent's Fourteenth Amendment rights, as defined in *Douglas*, even though respondent's trial counsel filed the notice of appeal and a motion for new trial which specifically designated the issues which could be considered on direct appeal. The assistance of appellate counsel in preparing and submitting a brief to the appellate court which defines the legal principles upon which the claims of error are based and which designates and interprets the relevant portions of the trial transcript may well be of substantial benefit to the defendant. This advantage may not be denied to a criminal defendant, solely because of his indigency, on the only appeal which the State affords him as a matter of right.

*Swenson v. Bosler*, 386 U.S. 258, 259, 87 S.Ct. 996, 997, 18 L.Ed.2d 33 (1967). Similar events transpired in *Penson* to thwart the indigent's right to appellate counsel where the court explained that the denial of new counsel "left the petitioner completely without representation during the appellate court's actual decisional process." *Penson*, 488 U.S. at 88, 109 S.Ct. at 354.

McQueen did not even have the advantage of counsel-prepared notice of appeal, or court-appointed counsel's motion to withdraw. McQueen filed a home-spun notice, which failed to comply with one of the Eighth District's local rules, and nothing was done to permit the prosecution of an appeal.

Moreover, if as the state appellate court found, the relationship between trial counsel and McQueen had ended, then trial counsel appointed for the appeal should have filed a motion to withdraw, thereby putting the appellate court on notice of the need for inquiry into this matter. See *Fields v. Bagley*, 275 F.3d at 481; *State v. Salyers*, 2005 WL 2335061, 2005-Ohio-5037 (Ohio App.

21

3 Dist.); and see *State v. Skaggs*, 1999 WL 980641 (Ohio App. 8 Dist.).[11]  The onus clearly was not

on McQueen to file his own motion for substitution of counsel.


Since there is arguable merit to McQueen's ground, the court should dismiss the petition

without prejudice.[12] See *Picard v. Connor* 404 U.S. at 277; *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct.

1198, 71 L.Ed.2d 379 (1982).


## *VII.*

*Conclusion:*

It is recommended that the petition be dismissed without prejudice for lack of exhaustion

pursuant to 28 U.S.C.§2254(b) and (c).

                              s/James S. Gallas
                              United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of

Court within ten (10) days of mailing of this notice.  Failure to file objections within the specified

---

[11] "The Code of Professional Responsibility in Ethical Consideration 2-30 advises that the "[f]ull availability of legal counsel requires * * * that lawyers who undertake representation complete the work involved. Trial counsel for a convicted defendant should continue to represent his client by advising whether to take an appeal and, if the appeal is prosecuted, by representing him through the appeal unless new counsel is substituted or withdrawal is permitted by the appropriate court." DR 2-110(A)(2) commands that "a lawyer shall not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client."

*State v. Skaggs*  1999 WL 980641, 3.


[12] The stay-and-abeyance procedure discussed in *Rhines v. Weber*, 544 U.S. 269, 276-77, 125 S.Ct. 1528, 1534-35, 161 L.Ed.2d 440 (2005),  *Pliler v. Ford*, 542 U.S. 225, 124 S.Ct. 2441, 159 L.Ed.2d  338 (2004), *Griffin v. Rogers*, 339 F.3d 626, 631 (6th Cir. 2005), and *Palmer v. Carlton*, 276 F.3d 777 (6th Cir. 2002), is "for the narrow group of cases in which a mixed petition is dismissed . . ." *Griffin* 399 F.3d at 631. McQueen's petition is not a mixed petition of exhausted and unexhausted grounds to warrant protection of the exhausted grounds. See also *Stedman v. Hurley*, 2006 WL 2864319, 8 (N.D. Ohio).

22

time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).


Dated: November 20, 2008